**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 15-cv-00681-CMA

MAZEN ARAKJI,

    Plaintiff,

v.

CLIFF HESS,
ANDREW MARTINEZ,
ROBERT BREWER,
CHRISTOPHER FAYLES,
TRACEY LEESE,
JASON LINGLE,
BRENDA SORRELES,
STEVE AUSTIN,
DAN McQUEEN,
ERIC FREDRICK,
NEIL MARTINEZ,
VINCENT LOPEZ,
DESHAWN ABRAM, John Doe 6 and John Doe 7,
HERMAN HEARD,
PAUL SEGURA,
KARL FORD,
SHAWN LAUGHLIN,
MARK THOMPSON,
ANDREW JOHNSON,
DWITAMA SUMARSAM,
SCOTT LAFLEUR,
HEIDI WALTS,
JASON HEBRARD,
STEVE FRANZ,
CHRIS KEARNS,
HEIDI SCOTT, and
BROOMFIELD CITY AND COUNTY,

    Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT CITY AND COUNTY OF BROOMFIELD'S MOTION TO DISMISS**

The matter before the Court is Defendant City and County of Broomfield's ("Broomfield") Motion to Dismiss Plaintiff's Second Amended Complaint. (Doc. # 102.) Plaintiff's state-law claims are barred by Colorado's sovereign immunity, but Plaintiff has sufficiently pled a claim for municipal liability as a matter of law.

## I. BACKGROUND

Plaintiff is 34 years old and is both academically and professionally successful.[1] (Doc. # 84 at ¶¶ 1–2.) Due to a failed business venture, however, Plaintiff was "forced" out of his apartment due to an inability to pay rent. (*Id.* at ¶ 3.) Plaintiff moved his belongings to a rental storage facility and slept in his car, which was parked outside the storage unit holding his belongings. (*Id.*) The storage facility has a locked gate, and customers are required to enter a code on a keypad to gain access. (*Id.*)

On the evening of April 29, 2014, two police officers—Defendants Cliff Hess and Andrew Martinez—jumped over the fence to enter the storage facility and approached Plaintiff. (*Id.* at ¶ 5.) Plaintiff produced his license and opened his storage unit upon request, but did not comply when the officers ordered him to vacate the premises. (*Id.*) A third officer—Defendant Eric Fredrick—was called, and the officers arrested Plaintiff

---

[1] Plaintiff earned a Bachelor's and Master's degree in Electrical and Computer Engineering from the University of Colorado Boulder. (Doc. # 84 at ¶ 1.) He also completed the Embedded Systems Engineering certificate program at the University of California Irvine and holds numerous other certifications. (*Id.*) Additionally, at Sun Microsystems (now Oracle), Plaintiff was promoted within six months of being hired and accepted into the selective Sun Engineering Enrichment and Development program, designed for individuals with a high potential to excel. (*Id.* at ¶ 2.)

for trespass. (*Id.*) Plaintiff alleges that all three officers violated his Fourth Amendment rights and conspired to violate his federal rights; he also sues them for false imprisonment under a state criminal statute. (*Id.* at ¶¶ 7–20.) Plaintiff further alleges that Broomfield is liable under *respondeat superior* for the false imprisonment claim. (*Id.* at ¶¶ 21–22.)

Upon arrival at the Broomfield Detention Center, a fourth officer—Defendant Tracey Leese—violently manhandled Plaintiff while placing him in a solitary cell, treatment Plaintiff alleges violated his Due Process rights. (*Id.* at ¶¶ 23–26.) Plaintiff's detention was delayed until 12:30 p.m. the following afternoon, which amounted to a total detention of approximately thirteen hours. (*Id.* at ¶¶ 28–29.) Plaintiff sues the supervising officer on duty—Defendant Neil Martinez—for violation of Federal Rule of Criminal Procedure 5 and the Fourth and Fourteenth Amendments. (*Id.* at ¶¶ 30–36.)

No charges were filed against Plaintiff when he was released; however, Plaintiff was told that the police had spoken to the owner of the storage facility and asked him to put up signs forbidding overnight stays. (*Id.* at ¶¶ 37–38.) The owner did not put up any such signs, and Plaintiff continued to sleep in his car at the storage facility. (*Id.* at ¶ 39.) At some point in May of 2014, Plaintiff began staying in motels, when he could afford it, or sleeping in his car, which would be parked in various parking lots. (*Id.* at ¶¶ 39–40.) In June of 2014, the storage facility put up signs forbidding overnight parking and delivered a notice to vacate to Plaintiff. (*Id.* at ¶ 41.) Plaintiff moved his belongings to a different rental-storage facility nearby. (*Id.*)

On June 22, 2014, Defendant Officer Andrew Martinez confronted Plaintiff while he was sleeping in his car in the parking lot of a city park. (*Id.* at ¶ 45.) Although there was no sign indicating that no parking was allowed in the evenings, Officer Martinez ordered Plaintiff to leave the parking lot or he would arrest Plaintiff for trespassing. (*Id.* at ¶¶ 45–48.) On July 1, 2014, Defendant Officer Chris Kearns confronted Plaintiff as he slept in his car, which was parked on the side of a city street. (*Id.* at ¶ 54.) Officer Kearns banged on the car window and shouted for approximately thirty minutes; Plaintiff did not acknowledge him, but did record the incident on his cell phone. (*Id.* at ¶¶ 54–56.) Similar incidents occurred on July 5, 2014, with Defendants Officers Andrew Martinez and Vincent Lopez; July 31, 2014, with Defendant Officer Chris Kearns; and August 21, 2014, with Defendant Officer Deshawn Abram and a John Doe defendant. (*Id.* at ¶¶ 66–68; 96–98; 106–08.) Plaintiff sues these officers under a Due Process theory and for menacing under a state criminal statute. (*Id.* at ¶¶ 49–51; 57–60; 67–72, 75–76; 99–103; 109–15.) Plaintiff alleges that Broomfield is liable under *respondeat superior* for the menacing claims. (*Id.* at ¶¶ 52–53; 61–62; 73–74; 77–78; 104–05; 116–17.)

Following the July 5, 2014 incident, Defendant Officer Martinez left a criminal summons and a citation for trespass on Plaintiff's windshield; the form indicated that Plaintiff was personally served, but that Plaintiff refused to sign the form. (*Id.* at ¶¶ 79–81.) Plaintiff sues, arguing that the summons was not authorized by statute and that the service-and-signature statements were false, in violation of his Due Process rights. (*Id.* at ¶¶ 82–83; 88–91.) He also sues for forgery under a state criminal statute and for an

unlawful summons under a state statute authorizing summonses for misdemeanors and petty offenses. (*Id.* at ¶¶ 84–85; 92–93.) Plaintiff alleges that Broomfield is liable under *respondeat superior* for the forgery and unlawful summons claims. (*Id.* at ¶¶ 86–87; 94–95.)

On August 25, 2014, Plaintiff was stopped after running a stop sign and arrested for failure to appear with respect to his July 5, 2014 trespass citation. (*Id.* at ¶¶ 118–20.) Because of the infirmities with the underlying July 5, 2014 citation alleged by Plaintiff, Plaintiff also states that this August 25, 2014 arrest violated his rights. (*Id.* at ¶¶ 121–25.) He sues the officers who arrested him—Defendants Christopher Fayles and Andrew Martinez—under the Fourth Amendment, 42 U.S.C. § 1985, and a state criminal statute for false imprisonment. (*Id.* at ¶¶ 126–35.) Plaintiff alleges that Broomfield is liable under *respondeat superior* for the false imprisonment claim. (*Id.* at ¶¶ 136–37.) In the course of Plaintiff's arrest, the officers allegedly used unnecessary force, for which Plaintiff sues under the Fourth Amendment. (*Id.* at ¶¶ 138–46.) Officer Martinez's police report states that Plaintiff violently kicked the cage in the back of the police cruiser; Plaintiff alleges that this is false. (*Id.* at ¶¶ 226–28.) He sues Officer Martinez on a Due Process theory for forgery and filing a false report to authorities under state criminal statutes; he further alleges that Broomfield is liable under *respondeat superior* for the state-law claims. (*Id.* at ¶¶ 229–39.)

Upon arrival at the Broomfield Detention Center, Defendant Officer Christopher Fayles refused to show Plaintiff a copy of the arrest warrant. (*Id.* at ¶¶ 147–48.) A John Doe defendant took Plaintiff's eyeglasses from him and refused to return them, for the

5

specific purpose of disorienting Plaintiff.  (*Id.* at ¶¶ 151–53.)  As with Plaintiff's previous arrest, his detention was delayed.  (*Id.* at ¶¶ 155–57.)  Plaintiff sues for these purported legal violations on various legal theories.  (*Id.* at ¶¶ 149–50; 154; 158–64.)

At approximately 1:00 p.m. on August 26, 2014, Defendant Officer Herman Heard entered Plaintiff's cell at the Broomfield Detention Center.  (*Id.* at ¶¶ 165–67.)  Plaintiff stated that he was being unlawfully detained and was free to leave; Plaintiff attempted to leave, but was physically stopped by Officer Heard.  (*Id.*)  Because Plaintiff attempted to continue to move past Officer Heard, several other officers—Defendants Paul Segura, Shawn Laughlin, and Steve Franz—entered the cell and violently subdued Plaintiff, including tasing him.  (*Id.* at ¶¶ 167–69.)  Plaintiff was later strapped to a chair and placed in a solitary cell, with the assistance of Defendants Officers Karl Ford and Heidi Scott.  (*Id.* at ¶¶ 172–74.)  Plaintiff sues most of these officers under a Due Process theory.  (*Id.* at ¶¶ 170–71; 175–80.)

Plaintiff's detention lasted for a second night, into August 27, 2014, at which point he asked to make a phone call.  (*Id.* at ¶¶ 181–82.)  Defendant Officer Tracey Leese told Plaintiff he had to sign a document first; he refused to do so and, therefore, was denied a phone call.  (*Id.*)  He sues Officer Leese on Equal Protection and Due Process theories, as well as for violation of a state statute granting him the right to a phone call.  (*Id.* at ¶¶ 183–89.)  Plaintiff alleges that Broomfield is liable under *respondeat superior* for the state-law claim.  (*Id.* at ¶¶ 190–91.)  Also, Officer Leese offered Plaintiff food, but, when Plaintiff did not respond, did not provide the food.  (*Id.* at ¶¶ 192–93.)  Plaintiff sues on a Due Process theory for not being provided food.  (*Id.* at ¶¶ 194–95.)

As part of Plaintiff's release from detention, he was asked to sign two Appearance Bond Documents. (*Id.* at ¶¶ 196–98.) Plaintiff refused to sign the document concerning his trespass charge and alleges that Defendant Officer Shawn Laughlin falsified the documents by making it appear as though he signed both forms when he signed only the form concerning his interference charge. (*Id.* at ¶¶ 198–202.) Plaintiff sues Officer Laughlin on a Due Process claim and a state felony forgery statute and alleges that Broomfield is liable on the forgery claim under *respondeat superior*. (*Id.* at ¶¶ 203–09.) Further, during some sort of altercation related to the allegedly falsified bond paperwork, four officers—Defendants Herman Heard, Andrew Johnson, Dwitama Sumersam, and Mark Thompson—wrestled Plaintiff to the ground, subdued him, and handcuffed him. (*Id.* at ¶¶ 210–13.) Plaintiff sues these officers under a Due Process theory. (*Id.* at ¶¶ 214–25.)

Plaintiff alleges that the trespass and interference charges were without probable cause and ultimately dismissed by the municipal court. (*Id.* at ¶ 241.) He sues Defendants Officers Andrew Martinez and Christopher Fayles for malicious prosecution under both state and federal law. (*Id.* at ¶¶ 240–45; 248–51.) He alleges that Broomfield is liable on the state-law claims under *respondeat superior*. (*Id.* at ¶¶ 246–47; 252–53.)

On August 30, 2014, Plaintiff was confronted by officers—Defendants Robert Brewer and Christopher Fayles—as he slept in his car on the side of a city street. (*Id.* at ¶ 254.) The officers issued a parking ticket, which Plaintiff paid, but which he contends was unlawful. (*Id.* at ¶¶ 255–65.) Plaintiff sues the officers under a state criminal

7

statute for filing a false report to authorities and alleges that Broomfield is liable under *respondeat superior*.  (*Id.* at ¶¶ 255–65.)

On October 3, 2014, Defendant Officer Scott LaFleur confronted Plaintiff as Plaintiff slept in his car on the side of a city street.  (*Id.* at ¶ 266.)  Similar incidents occurred on November 3, 2014, with Defendant Officer Heidi Walts; December 16, 2014, with Defendant Officer Jason Lingle; and February 11, 2015, with Defendants Officers Steve Austin, Brenda Sorreles, and Jason Hebrard.  (*Id.* at ¶¶ 274–75; 283–85; 292–93.)  Plaintiff sues these officers under a Due Process theory and for menacing or harassment under state criminal statutes and alleges that Broomfield is liable under *respondeat superior* for the state-law claims.  (*Id.* at ¶¶ 266–73; 276–82; 286–91; 294–99.)

Finally, on April 7, 2015, Plaintiff was confronted by Defendant Officer Dan McQueen while sleeping in his car in the parking lot of a commercial center.  (*Id.* at ¶ 300.)  Plaintiff argues that this incident constituted an unlawful *Terry* stop for lack of reasonable suspicion of criminal activity.  (*Id.* at ¶¶ 301–03.)

Based on all of the foregoing, Plaintiff alleges that Broomfield has a custom and pattern of violating his Fourth and Fourteenth Amendment rights.  (*Id.* at ¶¶ 304–07.)

On July 16, 2015, Broomfield filed a Motion to Dismiss Plaintiff's Second Amended Complaint. (Doc. # 102.)  On July 22, 2015, Plaintiff filed a response, to which Broomfield replied on August 5, 2015.  (Docs. ## 105; 120.)

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed due to the plaintiff's "failure to state a claim upon which relief can be granted." A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. *See id.*; *see also Golan v. Ashcroft*, 310 F.Supp.2d 1215, 1217 (D. Colo. 2004). The Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).

Additionally, under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting and citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks and citations omitted; alterations incorporated).

Further, "only a complaint that states a plausible claim for relief survives a motion to dismiss [under Rule 12(b)(6)]. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (quotation marks omitted).

The purpose of this pleading requirement is two-fold: "to ensure that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an appropriate defense, and to avoid ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (internal quotation marks omitted).

### III.   ANALYSIS

Broomfield alleges three arguments for dismissal. First, Broomfield asserts that Plaintiff's state-law claims are barred by Colorado's sovereign immunity. Next, Broomfield contends that if the federal claims are dismissed, the Court should decline to exercise supplemental jurisdiction over the state-law claims. Lastly, Broomfield argues that the federal claims against it fail to plausibly plead a policy, practice, or custom under *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). The Court will address, in turn, each of Broomfield's arguments.

### A.   COLORADO'S SOVEREIGN IMMUNITY

Absent an unmistakable waiver by a state of its Eleventh Amendment immunity, or an unmistakable abrogation of such immunity by Congress, the Eleventh Amendment provides absolute immunity from suit in federal courts for states and their agencies. *Blatchford v. Native Village,* 501 U.S. 775, 785–86 (1991). Colorado has made a limited waiver of its sovereign immunity in the Colorado Governmental Immunity Act ("CGIA"), Colo. Rev. Stat. § 24-10-101 *et seq.* More specifically, Colorado law provides:

> A public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by the claimant except as provided otherwise in this section . . . .

Colo. Rev. Stat. § 24-10-106(1). Broomfield argues that this bar applies to all of Plaintiff's state-law claims because each lies in tort, and that none of the statute's subsections, which identify waivers of immunity, apply. Plaintiff responds by arguing that none of his state-law claims against Broomfield lie in tort because they are based on *respondeat superior*.

Plaintiff's argument fails because *respondeat superior* is a theory of tort liability or, more specifically, a theory of the principal's vicarious liability for the agent's tort. See *Raleigh v. Performance Plumbing & Heating*, 130 P.3d 1011, 1019 (Colo. 2006) ("*[R]espondeat superior* is based on the theory that the employee acts on behalf of the employer when the employee is within the scope of his or her employment. In such circumstances, the employer is vicariously liable for the employee's negligent acts."); Restatement (Third) Of Agency § 2.04 (2006) (defining *respondeat superior* to mean: "An employer is subject to liability for torts committed by employees while acting within the scope of their employment."). Moreover, each of Plaintiff's state-law claims against Broomfield's agents are either common-law torts (*e.g.*, his malicious-prosecution claims) or violations of state criminal laws. Criminal statutes rarely confer private causes of action. *Chrysler Corp. v. Brown,* 441 U.S. 281, 316 (1979); *Silverstein v. Sisters of Charity*, 559 P.2d 716, 718 (Colo. App. 1976). Even assuming *arguendo* that these statutes do create causes of action, those actions would undoubtedly lie in tort. Further, Plaintiff has not alleged that any subsection of Colo. Rev. Stat. § 24-10-106 waiving

11

immunity is applicable for the types of claims he brings. *Curtis v. Hyland Hills Park & Recreation Dist.*, 179 P.3d 81, 83 (Colo. App. 2007) (plaintiff has the burden of demonstrating that governmental immunity has been waived).

Thus, Plaintiff's state-law claims against Broomfield are barred by the CGIA and, therefore, are dismissed. Based on the foregoing, Broomfield's supplemental-jurisdiction argument is moot.

**B.   *MONELL* LIABILITY**

Plaintiff's final two counts—his ninety-third and ninety-fourth claims for relief—state that "[t]he Municipality of the City and County of Broomfield has a custom that encourages it's [sic] peace officers to break the law." Because of "the pattern that emerges from the previously stated allegations in the prior claims," Plaintiff alleges that Broomfield has violated his Fourth and Fourteenth Amendment rights. (Doc. # 84 at ¶¶ 304–07.) Broomfield argues that the allegations in Plaintiff's Second Amended Complaint fail to plausibly plead *Monell* liability. The Court disagrees with Broomfield.

A municipality may not be held liable under Section 1983 solely because its employees inflicted injury on the plaintiff. *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). Rather, plaintiffs must prove that "action pursuant to official municipal policy" caused their injury. *Id.* at 691. Thus, to establish municipal liability, a plaintiff must (1) identify a policy or custom that caused the injury, and (2) establish that there is a direct causal link between the policy or custom and the injury alleged. *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993) (citing *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). The Court is well aware of the fact that at

the time the complaint was filed, Plaintiff lacked access to specific details regarding the existence or absence of Broomfield's internal policies or training procedures. Nevertheless,

> [A] plaintiff suing a municipality must provide fair notice to the defendant, and this requires more than generically restating the elements of municipal liability. Allegations that provide such notice could include, but are not limited to, past incidents of misconduct to others, **multiple harms that occurred to the plaintiff himself**, misconduct that occurred in the open, the involvement of multiple officials in the misconduct, or the specific topic of the challenged policy or training inadequacy. Those types of details, **or any other minimal elaboration a plaintiff can provide**, help to "satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests," *Twombly*, 550 U.S. at 555 n.3, and also to "permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 129 S.Ct. at 1950.

*Taylor v. RED Dev., LLC*, No. 11-2178-JWL, 2011 WL 3880881, at *3 (D. Kan. Aug. 31, 2011) (emphasis added) (quoting *Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 843–44 (S.D. Tex. 2011)).

As for the first requirement, a policy or custom may take the form of a "formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013). The "'official policy' requirement is intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Id.* at 767. "[A] plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112,

127 (1988) (internal citation omitted).  With informal, unwritten policies, customs, or practices, the plaintiff can plead a pattern of multiple similar instances of misconduct; "no set number is required, and the more unique the misconduct is, and the more similar the incidents are to one another, the smaller the required number will be to render the alleged policy plausible."  *Griego v. City of Albuquerque*, 2015 WL 1906087, 100 F. Supp. 3d 1192, *16 (D.N.M. 2015).

In the instant case, Plaintiff's Complaint alleges such a pattern or custom. Plaintiff provides factual support that numerous Broomfield police officers persistently harassed him while he slept in his car, which he parked in public areas.  In fact, Plaintiff alleges, with a high degree of factual specificity, incidents on twelve occasions within a one-year period—April 29, 2014; June 22, 2014; July 1, 2014; July 5, 2014; July 31, 2014; August 21, 2014; August 30, 2014; October 3, 2014; November 3, 2014; December 16, 2014; February 11, 2015; and April 7, 2015.  *Cf. Lankford v. City of Hobart*, 73 F.3d 283, 287 (10th Cir. 1996) ("isolated and sporadic acts" did not amount to a custom under § 1983); *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996) (two instances of misconduct "do not indicate a 'persistent and widespread' pattern of misconduct that amounts to a city custom or policy of overlooking police misconduct"); *Eugene v. Alief Ind. Sch. Dist.*, 65 F.3d 1299, 1304 (5th Cir. 1995) (two incidents of alleged excessive force are insufficient to show policy or custom).  These incidents involve no fewer than sixteen different officers.  *See Praprotnik*, 485 U.S. at 127 (explaining that a custom requires that the alleged misconduct is "widespread"—i.e., involving a "series of decisions").  Plaintiff further alleges that each time he was

approached by a Broomfield police officer while sleeping in his car, the officers violated his constitutional rights. Plaintiff claims, and Broomfield does not deny in its motion to dismiss, that Plaintiff was not in violation of any local or state law preventing him from sleeping in his car at the place of each incident. Taking the evidence in the light most favorable to Plaintiff, and construing Plaintiff's complaint liberally, the claims plausibly allege that Broomfield's officers have a custom or practice of using *Terry* stops and arrests to harass Plaintiff while he slept in his car, without legal justification. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal citations omitted). This is sufficient, at the Rule 12(b)(6) stage, to plead a *Monell* claim.

## IV. CONCLUSION

Based on the foregoing, it is ORDERED that Defendant City and County of Broomfield's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. # 102) is GRANTED IN PART and DENIED IN PART, as follows:

- Plaintiff's state-law claims against Defendant City and County of Broomfield—specifically, Claims Six, Thirteen, Sixteen, Twenty, Twenty-Two, Twenty-Five, Twenty-Eight, Thirty-One, Thirty-Five, Forty, Fifty-Five, Fifty-Nine, Sixty-Seven, Sixty-Nine, Seventy-Two, Seventy-Five, Seventy-Seven, Seventy-Nine, Eighty-Two, Eighty-Five, and Eighty-Eight—are DISMISSED under Rule 12(b)(1); and

- The motion is DENIED in all other respects.

DATED:  December 2, 2015

                                        BY THE COURT:

                                        _____
                                        CHRISTINE M. ARGUELLO
                                        United States District Judge